Please report. Good morning. Good morning. Joshua Bacarach. I represent the Appellant Reliance Standard Life Insurance Company. I'd like to reserve two minutes of time for rebuttal, please. This case involves a claim for disability benefits under an ERISA plan. Dr. Wells is the claimant, a doctor, and he suffered a back injury, underwent a few surgeries, and when he submitted his claim for benefits, it was approved. Shortly thereafter, my client learned that Dr. Wells was not working full-time as advertised. Benefits were discontinued. At the district court level, the court applied the modified arbitrary and capricious standard of review that applies in this circuit when a client like mine both insures and makes the decision on eligibility. The district court found that there was not much evidence of a conflict other than the obvious one as being the insurer. The court also did not find that my client's decision was arbitrary and capricious, and that's the big problem here. The court refused to enter judgment in favor of my client, even though it made no finding of arbitrary and capricious behavior, and that's contrary to this court's decision in Snow v. Standard Insurance Company. Under Snow, when there's a deferential standard of review, the court, one way or another, has to decide whether the denial of benefits was arbitrary and capricious. Snow dealt with the exact same issue in this case, a remand because the court wanted additional evidence, and the Ninth Circuit said, that's wrong. Now, what evidence do we have in this case? Dr. Wells opened up his own medical practice after claiming disability. He hid that fact not only from my client, who would need to know it not only on the issue of whether he's disabled, but also on the amount of benefits that were payable. But he also hid that fact from his own doctor. He didn't tell his own doctor. And when Reliance Standard confronted the doctor about this issue, he lied. He told my client that this was a failed attempt at return to work. But that's not the truth. He sent a letter to his own patient saying that the reason why he closed that second practice was because the building had been sold and he had to move. That is the fact. We also know that he didn't close that practice because of a failed attempt to return to another area and open up another practice once again without telling my client. There's other evidence, too, that this man had no longer been disabled. He was refurbishing an old car. People who observed him, who he used to work with, said that he returned to all of his normal activities. A private investigator looked at him and underwent an examination and said there was no evidence to him that this person was disabled. So we have the doctor's own words in his advertisements saying that he worked full-time and did house calls. We have his statement to an investigator saying he worked full-time and did house calls. But this wasn't enough for the district court. The district court thought there should be more evidence. According to the district court, even though we have his own words, we should have asked for records of how many patients he actually saw, how much work he really did. But again, when we have his own words, why do we need that? More importantly, why did my client need to request them? These are the doctor's own medical records or treatment records, schedules. These are his own records. There's no reason why he could not have provided them to my client since he's represented by counsel, he knew this was the issue, and my client offered him two appeals. Well, we're on cross motions for summary judgment. He just failed to go forward in your argument with evidence to show that he had a case. The evidence that came in were his doctor's reports, okay? None of the doctor's reports specifically said he could go back to work, right? That is the medical side. On the other side, he voluntarily starts a practice and advertises that he's having a full-time practice according to, within your policy limits, the hours to work would be full-time practice. Correct. Including shutting it down and then opening up at another time. Now, when we review it, we're under reviewing what the denial was of standard under an abuse of discretion. Discretionary standard, right? Correct. So when they did that and they balanced what he's actually doing versus what the doctor said, you're saying then that that was not an abuse of discretion to say, I can use your actual actions and what you've actually said, and I don't have a treating doctor's rule that I have to observe or have to give deference to. Is that your argument? Correct. That's what you said and you agree. We know from Black and Decker versus Nord, even if his doctor said, in light of the fact that he's working full-time, I think he's disabled. We don't have to follow that. Now, I'm going somewhere. I understand. Somewhere in the record, I was trying, because we're on de novo review, summary judgment, cross motions, I was looking to see what he said. It seems to me I find vague references here and there about him hurting, whatever. But the fact was that the office was open. Am I misconstruing what the record on summary judgment shows? The record shows that his office opened in August. He said he was going to start his own practice. I'm talking about what he says about his work. I mean, I'm trying to figure out what I remember from briefing and the documents about what the doctors say he's not fit for practice. He opens the office, advertise, I'm open. But what does he say about his doing now in this office? Anywhere in the record? In the record, we have the private investigator's discussion with the doctor. I'm not talking about private, I'm talking about what he's asserting now, that he really wasn't capable to do it, but he was doing it anyway. Oh, I see. That was on appeal in a letter from his attorney to my client. That's when he stated, I didn't, you know, he never really comes out and says I wasn't working full-time. He says it was a failed attempt. That's why I closed the office. Now, what part of the summary judgment process was that letter? Well, that's actually in the administrative process. Yeah. That's after the initial denial of benefits during the appeal. Okay. And before he filed, and before we filed the action? Correct. Okay. It's definitely part of the administrative record. But, but, but that, and, and that was considered, would have been considered by us and the district court. How do we consider that letter then? How does, what, what, what value do we give that letter? How do we, how do we analyze it in our summary judgment analysis? I think that we, you see, it's a little bit strange in that you're looking at summary judgment, usually issues of fact, you're gone, but this is an ERISA case. And with the ninth- And it wasn't before, let me get, I might have misunderstood you. It was, that letter wasn't before standard. Reliance? Yes, it was. Yes, it was. It was in the administrative record. It clearly was. And so, you know, the important thing is, you know, what the courts have said about summary judgment is really the vehicle to get to the arbitrary and capricious standard. So, we do have conflicting facts, but that doesn't mean you just deny the motions. You have to decide whether, under all those facts, is it still arbitrary and capricious. Why is that letter important? Well, it is part of the administrative record, as I said. And it's important because it is a lie about why he stopped working. But we're on summary judgment. See, that's, that's my whole point. First of all, standard's working under an, an abuse of discretion. And we're looking at summary judgment to see whether the abuse, abuse of discretion. I'm trying to figure out what we do with that letter. Because we're trying to look at this now. We got cross motions. We can grant your motion, or we can grant the other motion at this point. It is one piece of evidence to consider in whether the denial of benefits was arbitrary and capricious. It is one piece of evidence. Just as the advertising- Now, is it a disputed piece of evidence with, which would preclude our actions in summary judgment because it's so critical. We have the medical side over here that says he, he can't work. And we have his actual side over here. And then he, and then, can he impeach his own actions by that letter? I think of course he can and he has. But the, the important thing is you're always going to have issues of fact in these aristic cases on a summary judgment motion. And that's why this court has said in the past that don't even consider it summary judgment. Maybe it's a Rule 52 motion on the record. So to put in a summary judgment standard just clouds the field here really. So what we're looking at is based on all this record, based on everything, and that's what Snow v. Standard says even under Abadie. What you have to do is look at the record that exists. And based on all the facts, was there a reasonable basis to conclude that the denial was arbitrary or was the denial- Well, but if we have a disputed issue of fact, you're asking us to reverse the motion for summary judgment for them. Is that what you're saying? Well, the district court really punted, to be honest. What the district court did was it said, I'm not ruling for either of you. What I'm doing is I'm going to remand it back to the plan to look, to gather more evidence. I don't really care about what the, because we're doing, I'm talking about what do you want us to do? I understand. And Your Honors, what I think that under Ninth Circuit law, what your, this court has to do is look at the evidence too and say, is it unreasonable? Is it unreasonable for a plan to deny benefits when the doctor's actually performing those duties, has advertised he's performing those duties, has told people he's performing all of those duties, lies about performing those duties when asked, and then opens up a new practice. Well, here I have another, I've got another issue. The Supreme Court's granted review, granted cert in a case called Glenn, which is, you know, is on the standard of review. So we don't know what they're going to do. I mean, we'll probably know soon. Isn't that throw another whole wrench into this? It could. I've actually briefed a case to the Supreme Court in the last few weeks that was being attempted to consolidate into Glenn. So I'm familiar, I've read the transcripts. My, you know, to say that you can predict, if I, I see I'm about to run out. If I may continue, though. You know, it's dangerous. We have questions, so. It's dangerous to predict what the Supreme Court will do. But let's say if they do revise the Firestone standard in Glenn, then do we do de novo review with the new standard, or do we send it back to the district court, apply the new standard? I think it's discretionary for this court, but to be honest, I would, I would think that the court would say there's a new standard. This is what happened after Abadie. After Abadie, there were a whole bunch of cases where this court said, let's send it back down and have, have a new look at it under the Abadie standard. However, that assumes that Glenn is going to change the landscape of the law. We don't know. We don't know. You're right. We'll know soon. But you're right. It's, would I ask this court to rush to a decision before Glenn? No. That wouldn't, that wouldn't be prudent. Okay. Thank you. Thank you, Your Honor. Morning. Good morning. May it please the Court, my name is Karen Kane, and I have the privilege of representing Dr. Wells in this case. It is Dr. Wells' position that this court may lack jurisdiction to hear this matter at this time, but if jurisdiction does lie, then this Court's de novo review should affirm the district court's finding that Reliance abused its discretion by arbitrarily and capriciously terminating Dr. Wells' benefits and should therefore affirm the district court's order granting summary judgment to Dr. Wells and direct that it enter judgment in favor of Dr. Wells, which it failed to do by remanding. Just as a matter of a threshold issue, the jurisdictional issue is important. As this Court knows, under 28 U.S.C. 1291, it only has jurisdiction over final decisions of federal district courts. Federal district court final decisions end the litigation on the merits, and they dispose of all of plaintiff's prayers for relief. In this case, neither occurred. The Ninth Circuit has noted that special circumstances may exist under Wendelman to allow kind of an exception to the rule and allow for immediate appeal of remand orders, but that three-part test is not met here either. I don't want to spend too much time on this if the ---- Let me interrupt you for just a second. If the district court erred by ordering a remand, you're saying that actually judgment should have been entered in favor of your client? Absolutely. I believe that under ---- So then what? That means we don't have any jurisdiction to review the district court's final decision in favor of your client? Is that what you're saying? I'm saying maybe not at this time. At what time would we have jurisdiction to hear it? Well, after ---- if you remanded back for the remand to continue, then Reliance would have to redetermine based on whatever new evidence they collected according to the court's remand order, and then the parties would be back in front of the district court if they continue the denial. But I thought you said that the district court erred by ordering a remand. It did. In fact, that should have been the end of the matter when the court found that Reliance had abused its discretion. That's true. When the court found on multiple occasions that Reliance did abuse its discretion, and under Snow and Abadie, that should have ended the matter, and it should have made a decision. So in essence it becomes the district court's decision becomes unreviewable according to what you're saying. Well, not really, because if it did not accept jurisdiction at this time, like I said, it would go back to the district court if Reliance continued to deny the benefits  But the court, the Ninth Circuit has also recognized that partial summary judgment orders are not immediately reviewable, but will be reviewable when the court does enter a final decision on the merits. Here there's been no final decision on the merits, which is whether Dr. Wells was entitled to benefits. So I do understand that it is a bit of a conundrum, but if jurisdiction does lie, then this Court's denotable review should grant Dr. Wells his benefits. The district court, we believe, correctly concluded on several occasions that Reliance abused its discretion. Reliance, in particular, based its decision on clearly erroneous findings of fact, based its decision on insufficient evidence, and denied and terminated its claim without relevant evidence. It's Reliance's duty to obtain relevant evidence in this case. And I think the conundrum is that Reliance never actually had any evidence in the record other than treating doctor's reports and a vocational expert that they actually hired to address the issue, all of which said that he was disabled. Then they get a phone call from the employer. The employer says he's open to practice, and they terminate just based on a newspaper advertisement that the employer sent. So what do we do if Glenn changes his standard of review? At that point, I think it should all go back to the district court to be re-reviewed. So just evaluate what it has under the proper standard of review as opposed to remanding it? Yes. I think that remands are contrary to the entire ERISA goal, which is to provide planned participants with an inexpensive and expeditious way to resolve benefit disputes. Remands are counter to that. I think that in this case, if Glenn does change the standard, then this should go back to the district court. It should apply the appropriate standard under Glenn, and it should make a decision one way or the other. As to what it has in front of it. As to the administrative record alone, according to Snow and Abadie. I don't believe that this case actually warrants additional evidence on top of what is already in the administrative record, like the district court wants. Basically, Reliance had what it had, and it arbitrarily and capriciously the district court already decided that. Contrary to what counsel said, the court actually ruled in favor of Dr. Wells and then remanded. So in this case, I believe that the decision has already been made that there was arbitrary and capricious behavior and an abuse of discretion by Reliance. Therefore, if the standard is changed by Glenn, the court can apply that standard. But if the standard doesn't change the court's finding of abuse of discretion, then I think that the court would then be directed under Snow and Abadie to find in favor of my client and award him that evidence. I didn't quite understand that again. Say it again. If the standard doesn't change. Well, if Glenn doesn't change the court's finding that Reliance abused its discretion. Oh, okay. Then I believe that the district court should be compelled to enter judgment in favor of Dr. Wells. And not remand. And not remand. Okay. I think we're both in agreement. Yeah, I got you. But whether this Court has jurisdiction is also an issue. I personally am not going to argue a lot about that, because I do believe that remand may result in a wasted proceeding, even though I do believe that any future decision by Reliance would be appealable. Remands tend to give plan administrators a second bite at the apple, according to this Gross-Solomon case from the Ninth Circuit. And there's really nothing about remands that do anything but allow plan administrators to get a mulligan. And another opportunity to do what they should have done under ERISA in the first place. And here it's clear that they've used their discretion three different ways. And I believe that Dr. Wells is entitled to judgment. Okay. Thank you for your argument. Your Honors? Yes. Would I be able to reserve any time for a survey bottle? No. But, I mean, you had a little time left if you didn't want to finish there. But I don't think he has any time left either, does he? So we're done. Okay. All right. Thank you. Unless either anyone on the – if any of the judges have any questions, the judges always get to ask questions. That's the unfair part about this. All right. Thank you both for your argument today, and this matter will stand submitted.
judges: Brunetti, Callahan, Benitez